Argued and submitted September 10, 1999, decision of Court of Appeals affirmed in part and reversed in part, judgment of circuit court reversed, and case remanded to circuit court for further proceedings August 3, 2000

Danita J. MACY
and Lawrence B. Macy,
*Petitioners on Review,*

*v.*

Douglas M. BLATCHFORD, M.D.,
*Respondent on Review,*

*and*

Phillip S. ALBERTS, M.D.,
*Defendant.*

(CC 9407-04746; CA A93045; SC S45678)

8 P3d 204

Kathryn H. Clarke, Portland, argued the cause and filed the brief for petitioners on review.

Lindsey H. Hughes, of Keating Jones Bildstein Hughes & Yelnosky, P.C., Portland, argued the cause and filed the brief for respondent on review.

D. Lawrence Wobbrock, Michael Banks, and Robert K. Udziela, of Pozzi Wilson Atchison LLP, Portland, filed the briefs for *amicus curiae* Oregon Trial Lawyers Association.

GILLETTE, J.

**GILLETTE, J.**

In this medical malpractice action, plaintiffs Danita and Lawrence Macy challenge a trial court ruling that prevented them from introducing evidence at trial that Dr. Blatchford (defendant) had a sexual relationship with Danita Macy[1] at the time when the Macys assert that he negligently treated her for persistent and debilitating pelvic pain. The Court of Appeals affirmed that ruling, specifically holding that the trial court did not err in granting defendant's motion *in limine* to exclude any evidence that he and Macy had a relationship of that kind. *Macy v. Blatchford*, 154 Or App 313, 329, 961 P2d 873 (1998). The Macys sought review by this court, and we allowed their petition to consider whether and how evidence of a sexual relationship might be relevant to a claim that a physician's treatment of a patient was negligent. We conclude that such evidence is relevant to one of the Macys' allegations, *viz.*, that defendant was negligent in failing to obtain Macy's informed consent to recommended surgery. We therefore reverse the decision of the Court of Appeals on that ground.

In January 1992, Macy consulted with defendant, a gynecologist, about severe and persistent pelvic pain. Macy had complained to defendant about pelvic pain previously, in 1982 and in 1985. Dr. Alberts examined Macy and performed a laparoscopy in February 1992, in the course of which he removed an endometrioma (an abnormal growth of uterine tissue outside the uterus) from Macy's left ovary. After reviewing Dr. Alberts' report and a videotape made during the laparoscopic surgery, defendant diagnosed endometriosis, a condition marked by growth of uterine tissue outside the uterus.

In May 1992, Macy again complained to defendant about pelvic pain. Defendant recommended additional laparoscopic surgery, including removal of Macy's left ovary and fallopian tube. On June 3, 1992, defendant performed that surgery. Afterwards, Macy continued to suffer pelvic pain.

---

[1] Hereafter, we refer to plaintiff Danita Macy as "Macy" and to plaintiffs collectively as "the Macys."

Defendant then discussed with Macy the possibility of removing her right ovary and fallopian tube, along with her uterus. Macy agreed to the additional surgery, which defendant performed on August 20, 1992.

Macy's pelvic pain did not subside after the second surgery. In fact, she began to suffer from new pain in her left side and back. Ultimately, Macy consulted a different physician, Dr. Ellis, about the latter pain. Ellis determined that Macy's left ureter—the tube connecting the kidney to the bladder—was obstructed, and performed surgery to correct the problem. Ellis believed that defendant inadvertently had stapled Macy's ureter during the June 1992 surgery, thereby causing the obstruction and related pain.[2]

In 1994, the Macys filed the present malpractice action against defendant. In their complaint, they alleged four specifications of negligence—that defendant had been negligent in: (1) stapling Macy's ureter during the June 1992 surgery; (2) failing to ascertain that Macy's continuing pain after the June 1992 surgery arose from the obstructed ureter; (3) recommending the August 1992 surgery; and (4) failing to obtain Macy's informed consent for the August 1992 surgery. Defendant's answer denied all four specifications of negligence.

Shortly before trial, the Macys moved to amend their complaint to include a fifth specification—that defendant had been negligent in continuing his physician-patient relationship with Macy after entering into a personal, sexual relationship with her. In submitting their motion, the Macys asserted that defendant would not be prejudiced by the addition of that specification, because he and his attorneys had been aware from the beginning that the Macys intended to make an issue of the alleged personal relationship.

Defendant opposed the motion to amend, arguing that the amendment was time-barred, that its inclusion would be unfairly prejudicial, and that the Macys had failed

---

[2] Macy continued to suffer from pelvic pain after Ellis corrected the obstructed ureter. She consulted a new gynecologist, Dr. Redwine, about her continuing pelvic pain. Like defendant, Redwine suspected endometriosis. With Macy's consent, Redwine performed a final surgery to remove endometrial tissue. As of February 1996, Macy's pelvic pain substantially had resolved.

to allege any injury related to that amendment. Defendant also filed a motion *in limine* to exclude any evidence of a sexual relationship between Macy and defendant. Defendant argued that any such evidence was unfairly prejudicial, OEC 403, and that it was irrelevant to the specifications of negligence that the Macys had pleaded, OEC 402. Ultimately, the trial court denied the Macys' motion to amend and granted defendant's motion *in limine*.[3] A jury thereafter returned a verdict in favor of defendant.

The Court of Appeals affirmed the trial court's rulings concerning the motion to amend and the motion *in limine*. With regard to the motion *in limine*, the court opined that the evidence of a sexual relationship between defendant and Macy was not admissible, because it was not relevant to any of the specifications of negligence that the Macys had pleaded. *Macy*, 154 Or App at 326-29. The Court of Appeals also concluded that, even if erroneous, the denial of the Macys' motion to amend could not amount to reversible error, because the Macys had suffered no actual prejudice from that ruling. The court explained that the theory underlying the amendment—that Macy would not have undergone the August 1992 surgery if she had been referred to another physician—was defeated by a special finding by the jury that defendant's surgery recommendation was one that could have been made in compliance with the applicable standard of care. *Id.* at 331.

In their petition to this court, the Macys challenge only the Court of Appeals' affirmance of the trial court's order granting defendant's motion *in limine*. They argue that, contrary to the Court of Appeals' reasoning, evidence of a sexual relationship between defendant and Macy was relevant to the third (negligence in recommending the August 1992 surgery) and fourth (negligence in failing to obtain informed consent) specifications of negligence in their complaint.[4] In considering those arguments, we are mindful of the relatively

---

[3] The Macys made an offer of proof that included: (1) testimony by a medical expert about the various ways that a sexual relationship between a patient and physician might affect the physician's ability to comply with the standard of care applicable to physicians; and (2) Macy's testimony that she and defendant had been intimate physically and that that relationship might have affected her ability to make decisions about her own health care.

[4] The Macys do not assert that they are entitled to a new trial respecting their first and second specifications of negligence.

low threshold of relevance that is required under the Oregon Evidence Code. Under OEC 401, evidence is relevant if it has "*any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." (Emphasis added.)

■      The Macys argue that evidence of a sexual relationship between defendant and Macy is relevant to their third specification, because it supports an inference that, at the time that he recommended additional surgery, defendant lacked the objectivity that is required of physicians in their treatment of patients. The Court of Appeals rejected that theory, reasoning that the standard of care for medical practitioners does not delve into the practitioner's state of mind and requires only that his or her treatment of patients be objectively reasonable:

> "The question presented by the third specification was whether defendant's recommendation of the August 1992 surgery was *objectively* reasonable given the totality of plaintiff's medical circumstances. * * * Factors bearing on defendant's subjective state of mind were irrelevant to that objective inquiry."

*Macy*, 154 Or App at 326-27 (emphasis in original).

The Macys argue that the foregoing reasoning is "just plain wrong." They contend that, because defendant's conduct must be measured against a standard set by his own profession and because "everyone," including the medical profession as a whole, understands that physicians must be dispassionate and objective when making treatment decisions, maintaining an objective mental state is part of the standard of care that is applicable in this case. Thus, they conclude, any fact suggesting that defendant lacked objectivity in making his treatment recommendations to Macy is relevant and admissible to show that he was negligent.

■■      We are not persuaded. The standard of care that is applicable to the medical profession requires physicians to "use that degree of care, skill and diligence that is used by ordinarily careful physicians * * * in the same or similar circumstances in the community of the physician * * * or a similar community." ORS 677.095(1); *see also Creasey v. Hogan*, 292 Or 154, 163, 637 P2d 114 (1981) (stating standard). That

standard is an objective one; it provides no ground for delving into a physician's subjective state of mind. Physicians may violate their *ethical* duties if they fail to maintain the requisite clear and objective state of mind—for example, if they work while intoxicated or while their judgment is clouded by a relationship with a patient. But if, despite their less than optimal mental and emotional condition, their actual treatment of a patient reflects the appropriate degree of care, they cannot be held liable in negligence.

This court has suggested as much in its cases. For example, in *Eckleberry v. Kaiser Foundation et al*, 226 Or 616, 624, 359 P2d 1090 (1961), the court considered a plaintiff's requested instruction to the effect that a specialist has a duty to "possess[ ] that degree of learning and skill ordinarily possessed by specialists * * * in the same * * * field." The court concluded:

> "The plaintiff's requested instruction was clearly erroneous. Under the requested instruction, the test of whether or not the practitioner was negligent is based upon his *knowledge* of his professed art. A licensed practitioner of the healing art of medicine is presumed to have the necessary medical knowledge to practice his profession. *The law cannot equate the mental ability of various individuals; it seeks only to fix a standard by which a jury may determine whether or not the practitioner has properly performed his duties toward his patient.*"

*Id.* at 624-25 (emphasis added).

Similarly, in *Rogers v. Meridian Park Hospital*, 307 Or 612, 772 P2d 929 (1989), the court considered the correctness of the then-standard error-of-judgment instruction. That instruction provided, *inter alia*, that, when there are differences of opinion among members of the medical profession as to the proper course of treatment, a physician must exercise "reasonable judgment." *Id.* at 615. The court concluded that the instruction in question was confusing and that its use was reversible error. It explained that the instruction

> "makes it appear that reasonable *judgment* is the crucial issue. It is not. In fact, reasonable judgment is irrelevant if the treatment option selected provides reasonable care. A

doctor may not know that there is more than one treatment option, or the doctor may adhere only to one option, unreasonably rejecting all others. In both of these instances the doctor, by ignoring or rejecting all other treatment options, may not be exercising reasonable *judgment*. Nevertheless, the doctor is not liable for negligence if the treatment furnished is consistent with reasonable care."

*Id.* at 619 (emphasis in original).

In the present case, the jury had to determine in addressing the Macys' third specification of negligence whether defendant's recommendation for the August 1992 surgery was *objectively* reasonable, *i.e.*, whether that recommendation departed from the treatment that other gynecologists in the community exercising ordinary care would have offered. Defendant's subjective frame of mind in making that recommendation was not relevant to that issue. Thus, at least insofar as the Macys sought to offer evidence of a sexual relationship to prove something about defendant's state of mind in the context of that specification, the trial court properly excluded it from the jury's consideration. In that respect, the trial court and Court of Appeals did not err.[5]

The Macys next argue that the excluded evidence was relevant to their fourth specification, which alleged negligence:

"[i]n failing to obtain Plaintiff Danita Macy's informed consent to surgical removal of her uterus and right ovary, in

---

[5] The Macys also suggest that evidence of a sexual relationship might be relevant to the third specification to resolve any factual dispute about Macy's "medical circumstances" at the time of treatment. In particular, the Macys argue, that the evidence at issue might raise questions in the minds of the jurors about the accuracy of defendant's evaluation of Macy's medical history and symptoms. However, because the Macys never made that argument to the trial court, we decline to consider it.

The Macys assert that they *did* raise this "credibility argument" with regard to both the third and fourth specifications, because it is inherent in one of the central arguments that they made to the trial court—that the evidence at issue showed that defendant lacked the objectivity that was required of him as a physician when he recommended the August 1992 surgery. However, after having examined the Macys' memorandum in opposition to the motion *in limine* and the transcript of the proceedings during which the motion was discussed, we are persuaded that the relevance of the evidence to the credibility of defendant's story was not raised in the trial court, either expressly or as a necessary corollary to the "objectivity" argument that the Macys did articulate.

that Defendant * * * did not advise her that there were medical and conservative surgical treatment options available as alternatives to sterilization and menopause, and he did not ask if she wanted detailed information about each of these alternatives."

The Macys contend that the duty of physicians to obtain informed consent includes a duty to explain that there may be alternative methods of treatment and that the duty presupposes that the patient is in a condition to understand the information that is being conveyed. In view of that presupposition, the Macys argue, evidence that shows that a physician was aware that a patient was not capable of understanding a physician's explanation is relevant to whether the physician's actions met the applicable standard of care. In the Macys' view, evidence of a sexual relationship between defendant and Macy thus is relevant, because it would support a conclusion that Macy lacked the state of mind that the standard of care implies, *i.e.*, such evidence would tend to prove that Macy would trust defendant's treatment choice implicitly and would be incapable of listening objectively to any information about alternatives that defendant might have presented.

■ The Court of Appeals did not address that argument. It concluded on a different ground that the evidence at issue was irrelevant, focusing on what it perceived as an inadequacy in the Macys' pleading:

"[P]laintiff's state of mind—her subjective willingness to seek additional information—is irrelevant to her informed consent claim, *as that claim is pleaded*. As noted, plaintiffs' informed consent specification focuses solely on *defendant's* conduct, particularly whether defendant told plaintiff that 'there were medical and conservative surgical treatment options available * * *.' Thus, even assuming that evidence pertaining to the alleged relationship might bear on plaintiff's state of mind, her state of mind was irrelevant to the informed consent specification."

*Macy*, 154 Or App at 329 (emphasis added).

■ We do not agree with that interpretation of the Macys' informed consent specification. The Macys pleaded that defendant failed to "obtain Plaintiff Danita Macy's

informed consent"—words that relate to Macy's state of mind when she consented to the second surgery. The issues were whether Macy "consented" and whether her consent was "informed." A physician's failure to "advise" of treatment alternatives may arise solely out of a physician's silence, but it also may arise in circumstances when the physician mouths the words to a patient who, for whatever reason, at that time lacks the capacity to listen to or to understand the significance of what is being said. In short, we are not persuaded by the Court of Appeals' conclusion that the Macys' pleadings are a barrier to considering their theory. We turn to the theory itself.

■     The standard of care with respect to informed consent in medical malpractice cases is codified at ORS 677.097. *See Zacher v. Petty*, 312 Or 590, 593, 826 P2d 619 (1992) (so stating). ORS 677.097 provides, in part:

"(1)   In order to obtain the informed consent of a patient, a physician * * * shall explain the following:

"(a)   In general terms the procedure or treatment to be undertaken;

"(b)   That there may be alternative procedures or methods of treatment, if any; and,

"(c)   That there are risks, if any, to the procedure or treatment.

"(2)   After giving the explanation specified in subsection (1) of this section, the physician * * * shall ask the patient if the patient wants a more detailed explanation. If the patient requests further explanation, the physician * * * shall disclose in substantial detail the procedure, the viable alternatives and the material risks unless to do so would be materially detrimental to the patient."

Because the legislature defined informed consent by statute, we must attempt to determine its intent with regard to the relevance of the patient's state of mind. To do so, we employ the analysis set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). Under *PGE*, we first consider the text and context of ORS 677.097, and proceed to other considerations only if text and context are inconclusive. *Id.* at 610-11.

■ In our view, it is significant that the statute requires a physician to "explain" the treatment, alternatives, and risks to his or her patient. "Explain" means "to make plain or understandable: clear of complexities or obscurity: * * * provide an understanding of [something]." *Webster's Third New Int'l Dictionary*, 801 (unabridged ed 1993). Explanation implies more than a mere correct statement of the facts. An explanation clarifies an issue or makes it understandable to the recipient and, almost by definition, takes into account the mental state and capabilities of the recipient. For example, a physician can mouth words to an infant, or to a comatose person, or to a person who does not speak his or her language but, unless and until such patients are capable of understanding the physician's point, the physician cannot be said to have "explained" anything to any such person.

We also find it significant that the "explanation" requirement occurs in the context of describing what must be done to obtain a patient's informed consent. An "explanation" is "something that explains or that results from the act or process of explaining." *Id.* In that context, it is clear that the whole point of explaining the required information is to ensure that patients have the information that they need to decide whether to agree to the recommended treatment. The concept presupposes that the patient is capable not only of understanding the risks of and alternatives to a proposed treatment, but of using that information in a rational decision-making process.

■■ It follows that evidence that a patient did not, for whatever reason, have the capacity to understand and use what a physician told her would be relevant to show that the physician failed to obtain the patient's informed consent. That inquiry is not limited to evidence that purports to demonstrate an *absolute* inability to process a physician's words. In the context of the present case, for example, a reasonable juror might believe that a sexual relationship between defendant and Macy would undermine Macy's ability to listen objectively to and utilize information provided by the physician, in making an independent and informed decision about her health care.[6]

---

[6] In fact, the Macys' offer of proof included Macy's testimony that her relationship with defendant might have interfered with her ability to make decisions about her health care.

For the foregoing reasons, we conclude that evidence of a sexual relationship between a physician and patient may be relevant to show that the physician failed to obtain the patient's informed consent for treatment, and that the evidence that the Macys offered here was relevant in that respect.[7] The trial court therefore erred when it concluded that any evidence respecting a sexual relationship between defendant and Macy was irrelevant to the Macys' fourth specification of negligence.

Defendant contends that, even if the evidence at issue was relevant to the Macys' fourth specification of negligence, it was so unfairly prejudicial that the trial court cannot be faulted for excluding it. *See* OEC 403 (relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice). In that regard, defendant argues that admitting the evidence would have complicated the case unduly by inviting the jury to decide the case on a highly inflammatory and nonmedical ground. Defendant suggests, moreover, that the trial court in this case in fact *did* rule that the evidence was inadmissible under OEC 403 and that such a determination should not be reversed unless it amounts to an abuse of discretion.

Turning to the latter argument first, we do not agree with defendant's characterization of the trial court's rulings. Although the trial court expressly labeled the evidence as "highly inflammatory" and "prejudicial," it never decided that the evidence was *unfairly* prejudicial or that it ought to be excluded under OEC 403.

On the merits, defendant's argument respecting OEC 403 is not well taken. The evidence in question is central to the Macys' theory under their fourth specification of negligence. Its admission may be harmful, even devastating, to defendant's position, but relevant evidence often has that effect. On remand, the Macys are entitled to have the evidence considered by the trier of fact.

---

[7] Our holding that the evidence was relevant on this issue makes it unnecessary for this court to resolve whether the evidence also was relevant for other purposes, such as cross examination, and we therefore do not address that question.

We hold that the trial court erred in granting defendant's motion to exclude for all purposes any evidence suggesting the existence of a sexual relationship between defendant and Macy. Although such evidence is not relevant to the Macys' other specifications of negligence, it is relevant to the fourth specification pertaining to informed consent and, particularly, to the question whether, under the circumstances, Macy was in a condition to understand and to utilize medical information that the informed consent statute, ORS 677.097, presumes. The Macys are entitled to a new trial under their fourth specification of negligence.[8]

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

---

[8] The foregoing concludes our discussion of the sole question that the Macys raised in their petition to this court. In their brief on the merits, the Macys raise a different question, one pertaining to the trial court's denial of their motion to amend their complaint. Although this court has discretion to consider that question, which was before the Court of Appeals, we decline to exercise that discretion in this case. ORAP 9.20(2). *See State v. Castrejon*, 317 Or 202, 211-12, 856 P2d 616 (1993) (explaining scope of court's discretion under rule).