Argued and submitted September 13, 2011, affirmed September 12, 2012

Debra L. WARREN,
*Plaintiff-Respondent,*

*v.*

Paul S. IMPERIA, M.D.;
Imperia Laser Eye Centers, Inc.,
an Oregon corporation;
Imperia Laser Eye Centers,
an assumed business name of Paul S. Imperia, M.D.;
and Medical Eye Center, Inc.,
an Oregon corporation,
*Defendants-Appellants.*

Jackson County Circuit Court
064584L3; A143459

287 P3d 1128

Lindsey H. Hughes argued the cause for appellants. With her on the opening brief were Susan J. Mahoney and Keating Jones Hughes, P.C. With her on the reply brief was Keating Jones Hughes, P.C.

Robert K. Udziela argued the cause for respondent. With him on the brief were Lawrence Baron and Gregory K. Zeuthen.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Plaintiff brought an action against defendant for medical malpractice on the theory that defendant, an ophthalmologist, was negligent in screening and recommending plaintiff as an appropriate candidate for "monovision" eye surgery.[1] The case was tried to a jury, which rendered a verdict in plaintiff's favor. Defendant appeals from the resulting judgment, assigning error to the trial court's exclusion of (1) testimony about presurgical discussions with plaintiff related to the procedures to be performed, the risks of those procedures, and the availability of alternative treatment; and (2) various written documents (including consent forms), given to plaintiff prior to surgery, that pertained to the procedures to be performed, the risks of those procedures, and the availability of alternative treatment. The trial court excluded the evidence on the ground that it was not relevant to plaintiff's malpractice claim and was unfairly prejudicial. On appeal, defendant argues that the evidence was relevant to whether defendant properly assessed plaintiff as an appropriate candidate for surgery and that its probative value outweighed any danger of unfair prejudice. We conclude that the evidence was properly excluded as irrelevant and unfairly prejudicial and, accordingly, affirm.

In 2002, plaintiff sought eye care from Dr. Mitchell to improve her vision for reading at close range. Mitchell prescribed plaintiff a single contact lens in order to induce "monovision," a condition in which one eye is calibrated to be nearsighted and the other eye is calibrated (in this case, naturally) to be farsighted. Thus, the contact lens created nearsightedness in plaintiff's left eye. However, not all people can adapt to monovision. Plaintiff tried the contact lens for two weeks but was unable to tolerate the visual effect. It caused nausea, headaches, and a general feeling of motion sickness. Consequently, plaintiff stopped using the contact lens and reverted to using reading glasses.

Two years later, in December 2004, plaintiff sought treatment from defendant at his eye care clinic. Plaintiff

---

[1] Unless otherwise noted, we refer to defendants—Dr. Imperia, Imperia Laser Eye Centers, Inc., and Medical Eye Center, Inc.—both individually and collectively throughout this opinion simply as "defendant," without distinction.

was evaluated to determine the suitability of using a surgical procedure called conductive keratoplasty (CK)—a process that uses radio frequencies to shape the curve of the cornea—to induce nearsightedness in her left eye, which would result in monovision. If successful, monovision would improve plaintiff's ability to read without the aid of glasses using only her left eye. Her right eye, left in its natural state, would be used for seeing at a distance.

On December 14, an eye clinic technician conducted a "loose lens test" to determine whether plaintiff could tolerate monovision and was an appropriate candidate for CK. In the loose lens test, prescriptive lenses of varying strengths were placed in front of plaintiff's left eye while she read from a hand-held card and a wall projection in an exam room. Plaintiff was able to read comfortably during the test. Afterward, she met with defendant, who told her that, on the basis of the loose lens test, she was a good candidate for CK. At the end of the visit, as defendant was leaving the exam room, plaintiff testified that she disclosed her prior experience with contact-lens-induced monovision and indicated that she had been unable to tolerate its effects. Plaintiff further testified that defendant assured her that surgically induced monovision would be different, and defendant proceeded with the plan to perform CK.

On December 29, the day of the surgery, plaintiff underwent a second loose lens test to verify the proper degree of adjustment or focus to induce in her eye. Defendant then performed CK on plaintiff. After the surgery, plaintiff experienced several negative effects, including sickness, vision problems, and difficulty engaging in certain personal and professional activities. Plaintiff's symptoms did not subside, and she eventually elected to undergo another procedure, which was intended to enhance her visual acuity and alleviate some of her distress. Defendant performed that surgical procedure in 2005. Although the procedure did reduce the severity of some of plaintiff's impairments, she continued to experience headaches, vision problems, and diminished ability to engage in certain activities.

Plaintiff subsequently brought suit against defendant. Her original complaint contained four claims for

relief—two claims that defendant was negligent and two claims that defendant failed to obtain informed consent. Before trial, plaintiff dropped the informed consent claims. Ultimately, plaintiff's operative complaint contained two claims for relief. The first claim alleged that defendant was negligent

"in one or more of the [following] ways:

"a. by doing surgery to induce monovision * * * in Plaintiff's left eye when she reported a previous unsuccessful test to induce monovision through the use of contact lenses;

"b. by testing Plaintiff for monovision through the use of a so-called loose lens test instead of recommending Plaintiff to try a trial period of contact lens use to induce monovision for several days to see if Plaintiff found monovision acceptable."

The second claim alleged that defendant was negligent in performing the second (2005) procedure by failing to correct, *i.e.*, to eliminate, plaintiff's monovision.

Plaintiff moved *in limine* to exclude evidence relating to informed consent on the ground that it was irrelevant and unfairly prejudicial. Specifically, plaintiff sought to exclude informed consent documents, informational brochures addressing the procedure and its effects, and presurgical discussions related to the risks and potential results of CK. Defendant objected to the exclusion of that evidence, arguing that it provided important context for understanding defendant's interactions with plaintiff and demonstrated defendant's awareness of the risks of monovision in assessing whether plaintiff was an appropriate candidate for CK. The trial court granted plaintiff's motion, and the case was tried to a jury.

At multiple points during trial, defendant renewed his objection to the exclusion of "informed consent" evidence.[2] The trial court adhered to its earlier ruling, although it offered defendant the opportunity to identify more discrete pieces of information that might be relevant

---

[2] Defendant made an offer of proof that included consent forms, informational brochures, and a summary of proffered testimony of defendant and one of his technicians.

to the issues being tried. Defendant did not do so. The trial court ultimately entered a written order reflecting its initial ruling granting plaintiff's motion to exclude evidence pertaining to informed consent. The order provided, in relevant part:

> "Oregon law clearly distinguishes between claims for negligence and claims for failure to obtain informed consent. The former focuses on the conduct of the Defendant and whether the Defendant [met] the applicable standard of care; the lat[t]er focuses on whether the Plaintiff was adequately and appropriately informed about the risks relating to the proposed procedures before consenting to have the procedures performed. Because the informed consent claim is no longer a part of this action, evidence relating to warnings given to Plaintiff by Defendant is not admissible because this evidence is not relevant to the negligence claim presented in the complaint ([OEC] 402).

> "Defendant argues that evidence relating to pre operation discussions between the doctor (or staff) and the plaintiff/patient, education sessions with plaintiff/patient and consent disclosure forms signed by plaintiff/patient, relates to the standard of care and is, therefore, relevant to the negligence claim. While this evidence may well be considered part of the standard of care the doctor is obligated to follow, it does not directly relate to the allegations in plaintiff's complaint and would be more prejudicial than probative to the jury ([OEC] 403).

> "For the reasons stated, Plaintiff's pretrial motion is granted. The consent forms signed by Plaintiff, and the informational packet provided to Plaintiff are excluded. Witnesses are prohibited from giving testimony on the Defendant's effort to obtain Plaintiff's informed consent, including the consent forms, informational packets and any evidence regarding the preoperative discussions between Plaintiff and Defendant (or staff) about the procedures to be performed, alternative procedures available, and the risks relating to the same. Witnesses can testify to the risks of the procedures, and whether or not these risks occur with or without negligence."

At trial, the parties disputed what the standard of care was. Plaintiff's experts testified that the standard of care required defendant to administer a trial of monovision

with contact lenses before surgically inducing monovision in any patient. They also testified that, if a patient already had a history of monovision intolerance, she would not be qualified for CK unless she could successfully complete a new contact lens test. Thus, plaintiff's experts opined that defendant had violated the standard of care both as a general matter (by solely using a loose lens test to screen for monovision tolerance) and because defendant had proceeded with the CK surgery despite a contraindication in plaintiff's treatment history. Defendant's experts, on the other hand, testified that a loose lens test was the proper means of assessing a patient's tolerance for monovision and that defendant had satisfied the standard of care in this case. At the close of trial, the jury was instructed on only one claim: "Defendants were negligent because they proceeded with a monovision eye surgery without properly testing for Plaintiff's tolerance for monovision." As noted, the jury returned a verdict in plaintiff's favor.

On appeal, defendant argues that the trial court erred in granting plaintiff's motion to exclude evidence relating to informed consent.[3] Defendant argues that the evidence was relevant and highly probative in a number of ways: (1) it showed that plaintiff had ample opportunity to raise her concerns about monovision before the end of her visit, and thus bore on the credibility of plaintiff's account; (2) it rebutted assertions that defendant was rushed, uncaring, and dismissive by showing that the treatment process was more extensive than portrayed by plaintiff; (3) it shed light on the basis for defendant's decision-making; (4) it countered what defendant generally contends was a one-sided presentation of facts at trial; and (5) it tended to show that defendant met the standard of care in recommending surgery "based on the depth of his inquiry and the information learned about plaintiff through examination and testing and through their conversations and presurgical discussions."

Plaintiff responds that the evidence at issue— evidence relating to the nature of the procedure, the risks of

---

[3] Defendant addresses the admissibility of the various items of evidence in separate assignments of error. However, because those items of evidence pertain to the same subject matter and were excluded on the same basis, we address defendant's assignments of error collectively unless otherwise noted.

surgery, alternative treatment, and patient expectations—would have been relevant only if she had alleged that defendant failed to obtain her informed consent, a claim not alleged in plaintiff's operative complaint. According to plaintiff, the evidence had no bearing on the standard of care in this case; that is, it did not prove or disprove whether defendant properly assessed plaintiff as an appropriate candidate for monovision eye surgery. To the extent that some of the evidence was relevant, plaintiff contends that its probative value was substantially outweighed by the danger of unfair prejudice because it could have led the jury to improperly believe that plaintiff had assumed the risk of defendant's negligence. Alternatively, plaintiff contends that, even assuming that some of the evidence was relevant, the trial court did not err in excluding the evidence *in toto* because defendant, in making his offer of proof, failed to sort inadmissible from admissible evidence, and the trial court was under no obligation to do that for him. We agree with plaintiff that the evidence was irrelevant and unfairly prejudicial.

We review whether evidence is relevant for errors of law. *State v. Faunce*, 251 Or App 58, 72, 282 P3d 960 (2012). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401; *see also* OEC 402 (relevant evidence is admissible unless otherwise provided). The threshold for relevance is relatively low. *Macy v. Blatchford*, 330 Or 444, 448-49, 8 P3d 204 (2000). Relevance depends upon the allegations at issue in a particular case. *See, e.g., State v. Curtiss*, 193 Or App 348, 351, 89 P3d 1262, *rev den*, 337 Or 282 (2004) ("[T]here must be 'some rational relationship between the item of evidence offered by a litigant and the substantive issues properly provable in the case.'" (Citation omitted.)).

For a medical negligence claim, the standard of care requires that a physician "use that degree of care, skill and diligence that is used by ordinarily careful physicians * * * in the same or similar circumstances in the community of the physician * * * or a similar community." ORS 677.095(1); *see also Macy*, 330 Or at 449. In the present case, the jury

had to determine whether defendant's assessment and recommendation for surgery departed from the treatment that other ophthalmologists in the community exercising ordinary care would have provided. Evidence of information conveyed to plaintiff concerning the nature of the procedure, its inherent risks, and available alternatives had no bearing on what the standard of care was or whether defendant deviated from that standard. Evidence of plaintiff's awareness of that information would neither have assisted plaintiff in proving negligence nor have assisted defendant in showing that he was not negligent. Put simply, what *plaintiff* was told bears no relationship to what *defendant* should have done. Nor was defendant's subjective state of mind—for instance, his own awareness of the risks— relevant to whether he acted in conformance with the standard of care. *Macy*, 330 Or at 449-51. Rather, the only issue was whether the treatment furnished was objectively reasonable.[4] *Id.*

Defendant was not prohibited from testifying about any other aspects of his interactions with plaintiff. Defendant did, in fact, testify about his examination of plaintiff and the course of testing and treatment. He was also permitted to introduce evidence about what medical history he elicited from plaintiff, what specific opportunities were given to plaintiff to disclose the prior monovision trial, and whether plaintiff told him about that trial. (Defendant did not recall but admitted that it was possible.) Thus, defendant had the opportunity to directly refute plaintiff's version of events. Finally, defendant was not prohibited from testifying about the loose lens test or anything that bore on whether he met

---

[4] We note that the risks of surgery can be relevant to the issue of causation in a medical malpractice action. For example, evidence about inherent surgical risks may show that an injury can occur even in the absence of negligence. Thus, where a plaintiff contends that her injuries resulted from a negligently performed surgical procedure, the inherent risks of that surgery may be relevant to show that those injuries could have occurred without any negligence on the part of the defendant.

However, plaintiff's theory in this case was that she was never an appropriate candidate for surgery. In other words, under plaintiff's theory, her injuries categorically could not have occurred without negligence (because there should have been no surgery if defendant was not negligent). Thus, the risks of surgery were not relevant. In any event, the trial court did not preclude evidence related to the risks of surgery, but merely excluded evidence of communications with plaintiff about those risks.

the standard of care in assessing whether plaintiff was a good candidate for monovision eye surgery.

Even assuming that some of the excluded evidence was relevant—for instance, to undermine the credibility of plaintiff's account or to cast the character of the presurgical encounters in a different light—the trial court did not abuse its discretion in concluding that the evidence was unfairly prejudicial. Relevant evidence may be excluded under OEC 403 if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]" We review a determination under OEC 403 for an abuse of discretion. *State v. Rubio / Galligan*, 248 Or App 130, 137, 273 P3d 238, *rev den*, 352 Or 107 (2012).

Here, the potential prejudicial effect of the evidence is readily apparent. Evidence that plaintiff was told about the risks of surgery raised the possibility that the jury might consider whether plaintiff assumed the risks of the surgery or consented to defendant's negligence. In other words, the evidence had a significant potential to confuse the jury or lead it to decide the case on an improper basis. The probative value of the evidence, on the other hand, was marginal at best. Thus, the trial court did not abuse its discretion in excluding the evidence on that ground.

We note that, although there is no Oregon case directly on point, cases from other jurisdictions suggest that evidence of informed consent is irrelevant and unfairly prejudicial where a plaintiff alleges only negligence. *See, e.g.*, *Hayes v. Camel*, 283 Conn 475, 485-86, 927 A2d 880, 889-90 (2007) ("Our sister state courts that have considered this issue uniformly have concluded that evidence of informed consent, such as consent forms, is both irrelevant and unduly prejudicial in medical malpractice cases without claims of lack of informed consent."); *Liscio v. Pinson*, 83 P3d 1149, 1156 (Colo App 2003) (noting general rule); *Wright v. Kaye*, 267 Va 510, 528-30, 593 SE 2d 307, 317 (2004) (similar); *Waller v. Aggarwal*, 116 Ohio App 3d 355, 357-58, 688 NE 2d 274, 275-76 (1996) (similar).

Finally, to the extent that defendant assigns error to the exclusion of information conveyed to plaintiff preceding her second surgery, we conclude that any error in excluding

that evidence was harmless. That is so because no claim for relief related to the second surgery was submitted to the jury.

Affirmed.