Argued and submitted November 28, 2016, reversed and remanded
February 1, 2017

Lydia Patricia BERGSTROM,
as Conservator for
Garin Conrad Bergstrom, a Minor,
*Plaintiff-Appellant,*

*v.*

ASSOCIATES FOR WOMEN'S HEALTH
OF SOUTHERN OREGON, LLC,
an Oregon business entity,
*Defendant-Respondent,*

*and*

ASANTE,
an Oregon business entity,
dba Asante Health System,
aka Rogue Valley Medical Center,
*Defendant.*

Jackson County Circuit Court
13CV04141; A158700

388 P3d 1241

Helen C. Tompkins argued the cause and filed the briefs for appellant.

Michael T. Stone argued the cause and filed the brief for respondent.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

SHORR, J.

Plaintiff appeals a general judgment in favor of defendant. Plaintiff, Lydia Bergstrom, is the mother of a minor son, Garin, and she filed this lawsuit as a conservator on his behalf.[1] Defendant Associates for Women's Health of Southern Oregon, LLC, is an obstetrics clinic that provided plaintiff with prenatal care and assisted with the delivery of Garin. Plaintiff sued defendant for the injuries that Garin sustained during the birthing process.[2] Among other things, plaintiff alleged that defendant was negligent in performing a vaginal delivery for Garin when defendant "knew or should have known that [plaintiff] was at a significant risk of having a macrosomic baby with associated risk of shoulder dystocia." At trial, the jury returned a verdict for defendant. On appeal, plaintiff assigns error to the trial court's decision to exclude plaintiff's expert testimony. The trial court concluded that the testimony was outside the scope of the pleadings and, therefore, irrelevant and unfair to defendant because the pleadings failed to give defendant proper notice of the proffered testimony. Plaintiff's expert would have testified that defendant's ultrasounds of the fetus *in utero* were of poor quality, that the ultrasounds were improperly analyzed, and, as a result, that the fetus was incorrectly measured, all of which fell below the appropriate standard of care. Plaintiff asserts that the proffered expert testimony was squarely within the pleadings and relevant, and accordingly, we should reverse and remand for a new trial. For the reasons that follow, we agree with plaintiff and reverse and remand.

The pertinent facts are procedural and undisputed. Plaintiff was a patient receiving prenatal care from Dr. Carbonell, a member and agent of defendant. Carbonell also delivered plaintiff's son, Garin. At birth, Garin was

---

[1] Plaintiff is "LYDIA PATRICIA BERGSTROM, as Conservator for GARIN CONRAD BERGSTROM, a minor." (Capitalization in original.) For ease of reference, however, we use "plaintiff" to refer solely to the mother Lydia Bergstrom and "Garin" to refer to her son Garin Bergstrom.

[2] Plaintiff also sued Asante, dba Asante Health System, aka Rogue Valley Medical Center—the business entity that operated the hospital where the delivery occurred. However, plaintiff's claims against Asante are not subject to this appeal.

macrosomic—or very large. His size led to complications during delivery, including shoulder dystocia—a condition where, during delivery, his shoulder was caught on plaintiff's pelvis. Plaintiff alleged that the shoulder dystocia caused Garin to have a brachial plexus injury and Erb's Palsy in his right arm. Plaintiff sued defendant for those injuries. In paragraph 6 of the complaint, plaintiff alleged:

> "[D]efendant Associates *** was negligent in [plaintiff's] prenatal care and in her labor and delivery of Garin Bergstrom in *one or more of the following ways*:
>
> "a.  In performing vaginal delivery for Garin Bergstrom when defendants Carbonell and Associates knew or should have known that [plaintiff] was at significant risk of having a macrosomic baby with associated risk of shoulder dystocia.
>
> "b.  In failing to give [plaintiff] any or adequate informed consent that by her obstetrical history she was at significant risk for a macrosomic baby and associated shoulder dystocia.
>
> "c.  In failing to advise and recommend to [plaintiff] that in light of her obstetric history she should have a planned Caesarean Section for delivery of Garin Bergstrom.
>
> "d.  In delivering Garin Bergstrom with a vacuum extractor in the face of apparent failure of the baby to descend."

(Emphasis added.) Before trial, defendant never filed an ORCP 21 D motion to make plaintiff's pleading more definite and certain.

At trial, witnesses for both parties discussed the importance of ultrasounds as one tool, among others, for measuring fetal weight and predicting whether a baby will be macrosomic. Plaintiff elicited that testimony from two expert witnesses, while defendant elicited testimony regarding the importance of ultrasounds from both of its expert witnesses and Carbonell.

Plaintiff also proffered testimony from an expert witness, Dr. Rice, who, during an offer of proof, testified that Carbonell both failed to obtain the appropriate ultrasound

images to accurately measure abdominal circumference, biparietal diameter and head circumference, and poorly measured the ultrasound images that he did have. For example, Rice testified that, when he used Carbonell's ultrasounds to measure the fetus's biparietal diameter, he found that the fetus was in the ninety-third percentile for his gestational age when the ultrasound was taken, rather than the sixty-fourth percentile relied upon by defendant. Rice further testified that Carbonell's failure to obtain accurate ultrasounds and accurately interpret the ultrasounds that he did obtain fell below the standard of care. The trial court excluded Rice's testimony as irrelevant, reasoning, "I do think [Rice's testimony] is outside the scope of the pleadings."

Following plaintiff's case-in-chief, plaintiff once again attempted to admit Rice's testimony, noting that the complaint alleged that defendant was negligent "in performing vaginal delivery for Garin Bergstrom when * * * Defendant Associates should have known that [plaintiff] was at significant risk of having a macrosomic baby and associated risk of shoulder dystocia." Plaintiff argued that "[t]he ultrasounds that were performed [were] diagnostic in nature, and although they have multiple diagnostic goals, one of them is to identify estimated fetal weight which is a major risk factor [at] play in the facts of this case." As a result, plaintiff contended that Rice's testimony was relevant to prove subparagraph 6(a) of the complaint.

In response, the court noted that its "decision process was based upon the fact [that] although the specification of negligence is broad with the 'knew or should have known'" element, the allegation in subparagraph 6(a) was tied to the allegations in subparagraphs 6(b) and 6(c) that discuss obstetrical history. Thus, the court reasoned that any allegations that the ultrasounds were negligently performed were irrelevant. The court further explained, "The reason why I made that decision about the ultrasounds is I do believe that would impair [defendant's] right to a fair trial, because [defendant] just simply [did] not have notice of that issue and there's no opportunity to have an expert to come in and testify on the other side of that about what the ultrasounds mean."

At the conclusion of the trial, the jury returned a verdict for defendant. The trial court entered judgment for defendant, and plaintiff appealed. On appeal, plaintiff, reasserting the arguments made in the trial court, assigns error to the trial court's decision to exclude Rice's proffered testimony as outside the pleadings and, thus, according to the trial court, irrelevant and unfair to defendant because the pleadings failed to provide defendant with proper notice of that evidence.[3] In response, defendant argues that the trial court's decision was correct because the complaint did not contain a specific allegation "that any ultrasounds were negligently performed or interpreted by defendant," and that the allegation in subparagraph 6(a), though broad, must be read with subparagraphs 6(b) and 6(c), effectively narrowing subparagraph 6(a)'s allegation of negligence to exclude Rice's testimony. Defendant argues further that, even if Rice's testimony was relevant, the trial court correctly excluded it as unduly prejudicial under OEC 403. For the reasons stated below, we agree with plaintiff. Further, we find that the trial court's error substantially affected plaintiff's rights. Accordingly, we reverse and remand.

We review determinations of relevance for legal error. *Warren v. Imperia*, 252 Or App 272, 279, 287 P3d 1128 (2012). "[I]f evidence logically is relevant, a trial court has no discretion to label it as irrelevant." *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. Relevant evidence is admissible absent an exception "provided by the Oregon Evidence Code, by the Constitutions of the United States and Oregon, or by Oregon statutory and decisional law." OEC 402. Relevance "depends upon the allegations at issue in a particular case." *Warren*, 252 Or App at 279. Thus, "there must be some rational relationship between the item of evidence offered by a litigant

---

[3] Plaintiff also asserts the new argument that Rice's testimony was admissible because defendant "opened the door" for the testimony in both its opening statement and through Carbonell's testimony. Because we conclude that Rice's testimony was within the scope of the pleadings and relevant, we need not reach that argument.

and the substantive issues properly provable in the case." *Id.* (quoting *State v. Curtiss*, 193 Or App 348, 351, 89 P3d 1262, *rev den*, 337 Or 282 (2004) (internal quotation marks and brackets omitted)). Within that boundary, OEC 401 establishes a "very low" threshold. *Masood v. Safeco Ins. Co. of Oregon*, 275 Or App 315, 352, 365 P3d 540 (2015), *rev den*, 359 Or 525 (2016). "[I]f evidence even slightly increases or decreases the probability of the existence of a fact of consequence, then it is relevant." *Wingett v. Silbernagel*, 279 Or App 245, 253, 379 P3d 570 (2016).

Here, Rice's proffered expert testimony is relevant to allegations at issue in this case. As was noted above, in her complaint, plaintiff alleged:

"[D]efendant *** was negligent in [plaintiff's] prenatal care and in her labor and delivery of Garin Bergstrom in *one or more of the following ways*:

"a.   In performing vaginal delivery for Garin Bergstrom when defendants Carbonell and Associates knew or should have known that [plaintiff] was at significant risk of having a macrosomic baby with associated risk of shoulder dystocia."

(Emphasis added.) Both plaintiff and defendant presented witnesses, including Carbonell, who testified that ultrasounds are an important tool for doctors when determining if a baby is at risk of being macrosomic. Testimony regarding defendant's failure to obtain the correct ultrasound images necessary to accurately measure the size of the fetus or properly measure the images taken supports the proposition that defendant "should have known that [plaintiff] was at significant risk of having a macrosomic baby." Thus, Rice's excluded testimony is relevant, and the trial court erred in excluding it.

Defendant asserts that the trial court's ruling was correct because "there is no allegation in the complaint that any ultrasounds were negligently performed or interpreted by defendant." That argument is unconvincing. As we discussed above, plaintiff's allegation of negligence in subparagraph 6(a) is sufficiently broad to make Rice's testimony regarding the allegedly negligently performed and interpreted ultrasounds relevant. Though plaintiff's allegation

may have been susceptible to a motion under ORCP 21 D to make the allegation more definite and certain, defendant did not file such a motion in this case and, thus, that issue is not before us. *See Dundas v. Lincoln County*, 48 Or App 1025, 1031, 618 P2d 978 (1980) ("We conclude that plaintiff's allegation that defendant 'failed to take reasonable measures to provide adequate fire fighting equipment' is broad enough, in the absence of a motion to make more definite and certain, to include the nondiscretionary failure to maintain existing fire extinguishers.").

Defendant's argument that the trial court correctly ruled that subparagraph 6(a) is connected with subparagraphs 6(b) and 6(c) is similarly unconvincing. Defendant's argument is contradicted by the text of the complaint. Plaintiff's complaint states that "defendant * * * was negligent in [plaintiff's] prenatal care and in her labor and delivery of Garin Bergstrom in *one or more of the following ways*." (Emphasis added.) The phrase "one or more of the following ways" implies that each of the allegations in the subparagraphs that follow can be independent of one another. Additionally, each allegation is separately stated, and none expresses dependence on another. If we were to conclude that subparagraph 6(a) was dependent on subparagraphs 6(b) and 6(c), we would be imputing meaning into subparagraph 6(a) that does not exist.

Defendant argues further that the trial court also excluded Rice's testimony as unfairly prejudicial under OEC 403 because, in explaining its relevancy ruling, the court stated, "The reason why I made that decision about the ultrasounds is * * * because [defendant] just simply [did] not have notice of that issue * * *." The Supreme Court has recognized that trial courts may consider "unfair surprise" as a factor when balancing probative value versus prejudice under OEC 403. *Carter v. Moberly*, 263 Or 193, 200, 501 P2d 1276 (1972). However, here, the trial court did not consider "unfair surprise" or "unfair prejudice" as part of a balancing exercise under OEC 403 that weighed the probative value of the relevant evidence against the unfair prejudice of that evidence. On this record, the trial court's statement regarding whether defendant had notice of the ultrasound issue was just another way of saying that the evidence was

irrelevant because it was "outside the scope of the pleadings." Consequently, we reject defendant's OEC 403 argument because it does not address the trial court's reasoning in excluding plaintiff's proffered testimony.

Having concluded that the trial court erred in excluding Rice's testimony, we must next consider whether that error requires reversal. An evidentiary error is reversible only if it "substantially affects a party's rights." *Dew v. Bay Area Health District*, 248 Or App 244, 256, 278 P3d 20 (2012). An evidentiary error "substantially affect[s] a party's rights" where it "has some likelihood of affecting the jury's verdict." *Id.* at 258. Rice's testimony presents such a likelihood. As previously discussed, experts from both parties opined at trial that ultrasounds are important in estimating fetal weight and predicting whether a baby will be macrosomic. Whether or not defendant, through Carbonell, was negligent in performing or interpreting the ultrasounds in question speaks directly to plaintiff's theory that defendant "should have known that [plaintiff] was at significant risk of having a macrosomic baby with associated risk of shoulder dystocia." Thus, Rice's testimony "ha[d] some likelihood of affecting the jury's verdict," and, as a result, the trial court's error in excluding the testimony "substantially affect[ed]" plaintiff's rights. Consequently, we reverse and remand for further proceedings.

Reversed and remanded.