Frederick G. STICKEL, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 348, 2008.

Supreme Court of Delaware.

Submitted: April 29, 2009.
Decided: June 16, 2009.

Joseph A. Hurley, Esquire, Wilmington, Delaware, for appellant.

Danielle J. Brennan, Esquire, Department of Justice, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

HOLLAND, Justice.

The defendant-appellant, Frederick Stickel, appeals from the Superior Court's final judgment of conviction. Following a jury trial, Stickel was convicted of two counts each of Vehicular Homicide in the Second Degree[1] and Driving a Vehicle Under the Influence of Alcohol[2] after he drove his SUV while intoxicated and hit and killed two motorcyclists. In this appeal, Stickel claims that the Superior Court abused its discretion when it admitted toxicology reports offered by the State to show that the decedents were not intoxicated on the evening of the accident.

We have concluded that the trial judge properly exercised his discretion in deciding to admit the toxicology reports into evidence. The record reflects that Stickel's argument to the contrary is without merit. Therefore, the judgments of the Superior Court must be affirmed.

### Facts

Just before 7:30 p.m. on September 24, 2007, Luis Coreano and Jose Baez were riding their Kawasaki motorcycles eastbound on Route 273 in New Castle. They were side-by-side as they approached the intersection at Rambleton Road. Stickel was driving his green Chevy Tahoe west-

bound on Route 273. When he turned left onto Rambleton Road, he collided with Coreano and Baez. Coreano died at the scene and Baez died from his injuries soon after. At the scene of the accident, Stickel admitted that he drank one-and-a-half bottles of beer and two shots of vodka before driving his car. A blood test indicated that Stickel's blood alcohol content was .108.

Stickel was arrested and indicted by a grand jury on two counts of Vehicular Homicide in the First Degree[3] and several related offenses. He pleaded "not guilty." Trial began February 28, 2008.

At trial, eyewitnesses provided conflicting testimony about the decedents' rate of speed at the time of the accident. Two witnesses testified that the decedents were driving approximately 45 miles per hour. Another witness testified that the decedents were driving 65 to 70 miles per hour. The speed limit was 45 miles per hour.

There was also conflicting testimony about whether the decedents had been drag racing when the accident occurred. Three witnesses testified that they did not see the decedents drag racing or doing "wheelies." Two witnesses testified that they overheard an unidentified man at the accident scene claim that he had seen the decedents drag racing and doing "wheelies."

Corporal William Nottingham III conducted an accident reconstruction and testified as an expert witness at the trial. Nottingham testified that he could not ascertain the speed of any of the vehicles involved in the accident because of the significant weight difference between

---

1. Del.Code Ann. tit. 11, § 630 (2009).

2. Del.Code Ann. tit. 21, § 4177 (2009).

3. Del.Code Ann. tit. 11, § 630A(a) ("A person is guilty of vehicular homicide in the first degree when while in the course of driving or

operating a motor vehicle under the influence of alcohol or drugs or with a prohibited alcohol or drug content ... the person's criminally negligent driving or operation of said vehicle causes the death of another person.").

Stickel's SUV and the decedents' motorcycles. Over Stickel's objections, the State introduced toxicology reports showing that neither decedent had drugs or alcohol in his system at the time of the accident.

The jury found Stickel guilty of two counts each of the lesser-included offenses of Vehicular Homicide in the Second Degree[4] and Driving a Vehicle Under the Influence of Alcohol.[5] On June 23, 2008, the Superior Court sentenced Stickel to four years imprisonment followed by varying degrees of probation. Stickel filed a timely direct appeal with this Court.

### Trial Judge's Discretionary Ruling

Stickel argues that the trial court abused its discretion when it admitted the decedents' toxicology reports into evidence, because the reports were irrelevant and lacked probative value. Stickel asserts that the reports permitted the State to argue impermissibly that because the decedents had not consumed drugs or alcohol, they were driving safely. The State contends that Stickel's strategy at trial was to create doubt about whether his own conduct had caused the accident by putting the decedents' behavior at issue. Because Stickel put the decedents' behavior at issue, the State asserts that evidence that the decedents had not consumed drugs or alcohol was relevant to the decedents' behavior.

4. Del.Code Ann. tit. 11, § 630.

5. Del.Code Ann. tit. 21, § 4177. Stickel was unable to produce proof of insurance by the time of trial and pleaded guilty to violating the requirement of insurance for all motor vehicles required to be registered in the State. Del.Code Ann. tit. 21, § 2118 (2009).

6. *Charbonneau v. State,* 904 A.2d 295, 318 (Del.2006).

7. *Moorhead v. State,* 638 A.2d 52, 56 (Del. 1994) (quoting *Lampkins v. State,* 465 A.2d 785, 790 (Del.1983)); *see Charbonneau v. State,* 904 A.2d at 304 (citing *Lampkins v.*

The trial judge ruled that the toxicology reports, which showed that neither decedent had consumed drugs or alcohol on the evening of the accident, were admissible. Specifically, the trial judge concluded that the reports "have probative worth under Rules 401 and 402" and "should be admitted." The trial judge explained that the jury should know about the toxicology reports "because they are going to be focusing on the conduct of the [decedents] in this case ... and their driving, their perceptions, their alertness." The trial judge reasoned that "all of that is in play here because the jury is going to have to make a decision on the negligent causation."

### Standard of Review

We review a trial court's evidentiary rulings for abuse of discretion.[6] "A decision to admit testimony as relevant is within the sound discretion of the trial judge and will not be reversed absent a clear abuse of that discretion."[7] An abuse of discretion occurs when the trial judge "has exceeded the bounds of reason in view of the circumstances or so ignored recognized rules of law or practice so as to produce injustice."[8]

### Relevant Evidence Admissible

Evidence must be relevant to be admissible at trial.[9] Delaware Rule of Ev-

*State,* 465 A.2d at 790); *see also Lilly v. State,* 649 A.2d 1055, 1059 n. 2 (Del.1994) (explaining that a trial judge "is in the unique position to evaluate and balance the probative value and prejudicial aspects of the evidence") (quoting *Smith v. State,* 560 A.2d 1004, 1007 (Del.1989)).

8. *Lilly v. State,* 649 A.2d at 1059 (quoting *Firestone Tire & Rubber Co. v. Adams,* 541 A.2d 567, 570 (Del.1988)).

9. D.R.E. 402 (2009) ("All relevant evidence is admissible, except at otherwise provided by statute or by these rules or by other rules

idence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[10] This Court has stated that "[t]he definition of relevance encompasses materiality and probative value."[11] Evidence is material if it is offered to prove a fact that is "of consequence" to the action.[12] Evidence has probative value if it affects the probability that the fact is as the party offering the evidence asserts it to be.[13]

### Decedents' Behavior Challenged

To prove that Stickel was guilty of Vehicular Homicide in the First Degree, the State had to establish that: (1) Stickel was driving under the influence of alcohol or drugs at the time of the accident and (2) his criminally negligent driving caused the decedents' deaths.[14] Throughout the trial, Stickel attempted to create doubt about the second element by arguing that the decedents' possible speeding, drag racing or otherwise dangerous behavior while driving their motorcycles caused the accident. In his counsel's opening statement, Stickel referred to the decedents' motorcycles as "speed bikes," noted that a witness heard the motorcyclists "crank it up" before the accident, and alleged that the decedents were driving at a high rate of speed at the time of the accident. Counsel also told the jury that "it becomes very vital, very vital in this case, for you to determine whether the State has proven to you that the motorcyclists were not speed-

ing at a high rate of speed which nobody could anticipate and that they were looking [ahead,] watching where they were going," and not "looking at each other" and "talking to each other."

During cross-examination of the State's witnesses, Stickel's counsel continued to ask questions that put the decedents' behavior at issue. Counsel asked one witness for the State whether he knew which way the decedents were looking prior to the crash, whether or not he remembered "if there was any noise associated with the motors of the motorcycles," and whether he overheard someone at the accident scene claim that the motorcycles had been drag racing and doing wheelies. Stickel's counsel asked another State's witness questions regarding looking at his speedometer. He asked a third witness questions about the sound of motorcycles cranking the throttle, the specifics of the type of motorcycles the decedents were driving and whether the witness heard someone at the scene claim that the motorcycles had been drag racing. And, he asked a fourth witness whether he had talked to the police officer about the motorcycles speeding.

### Discretion Properly Exercised

■ The trial judge properly exercised his discretion when he admitted the evidence that the decedents had not consumed drugs or alcohol as relevant to the decedents' behavior. The reports provided another piece of evidence for the jury to weigh when considering whether the defendant's criminally negligent conduct

applicable in the courts of this State. Evidence which is not relevant is not admissible.").

10.  D.R.E. 401 (2009).

11.  *Lilly v. State,* 649 A.2d at 1060 (citing *Getz v. State,* 538 A.2d 726, 731 (Del.1988);

McCormick, *Evidence* § 185, at 541 (Cleary 3d ed.1984)).

12.  *Id.*

13.  *Id.*

14.  Del.Code Ann. tit. 11, § 630A.

caused the accident or whether the decedents' dangerous behavior caused the accident. The reports did not, as Stickel argues, permit the State to imply improperly to the jury that someone who is not intoxicated is more likely to be careful. They simply provided relevant evidence for the jury to weigh in considering whether the decedents had engaged in dangerous behavior that caused the accident.

In *Lilly v. State*, the defendant was driving while intoxicated, lost control of his vehicle, crossed over the median and collided head-on with another vehicle, killing the driver.[15] He was charged with Murder in the Second Degree.[16] At trial, evidence was presented that the decedent's vehicle was traveling normally in its proper lane.[17] The defendant did not seek to refute that evidence.[18] In fact, no evidence was offered at trial to suggest that the decedent had been driving in an improper place or manner.[19] Nonetheless, the defendant sought to introduce evidence of the decedent's blood alcohol content and ingestion of cocaine to show that her conduct caused the accident.[20] The trial court excluded the evidence as irrelevant and as more prejudicial than probative.[21] On appeal, we held that the trial court properly exercised its discretion.[22] We explained that:

> [The defendant] failed to establish a factual basis demonstrating the relevance of [the decedent's] conduct. While evidence of [the decedent's] blood alcohol content or level of impairment from cocaine may have been probative of her conduct that night, such evidence is not relevant if it was not asserted at trial that [the decedent's] conduct was a cause of the accident.[23]

At Stickel's trial, in contrast, it was asserted that the decedents' conduct was a cause of the accident. The State's witnesses gave conflicting testimony about whether the decedents had been speeding, drag racing or otherwise driving dangerously. In his opening statement and during cross-examination, Stickel attempted to place the decedents' behavior at issue. Therefore, whether the decedents had consumed drugs or alcohol, which would affect their behavior, was relevant.[24]

Stickel relies on two cases that are inapposite. He relies on *City of Wauwatosa v. Guetzkow*, in which the Wisconsin Court of

---

15. *Lilly v. State*, 649 A.2d 1055 (Del.1994); see *Zdina v. State*, 1997 WL 328593, at *1 (Del.Supr. May 23, 1997).

16. *Lilly v. State*, 649 A.2d at 1056. To prove the defendant was guilty of Murder in the Second Degree, the State must establish that the defendant recklessly caused the death of the decedent under circumstances manifesting a cruel, wicked and depraved indifference to human life. Del.Code Ann. tit. 11, § 635(1).

17. *Lilly v. State*, 649 A.2d at 1060; see *Zdina v. State*, 1997 WL 328593, at *1.

18. *Id.*

19. *Id.*

20. *Id.;* see *Zdina v. State*, 1997 WL 328593, at *1.

21. *Id.* (citing D.R.E. 401; D.R.E. 403).

22. *Id.,* see *Zdina v. State*, 1997 WL 328593, at *1.

23. *Id.*

24. *Lilly v. State*, 649 A.2d 1055 (Del.1994); see *Miller v. State*, 236 Ga.App. 825, 513 S.E.2d 27, 30–31 (1999) (explaining that the conduct of the decedent is material in a vehicular homicide case "to the extent it bears upon the question of whether under all the circumstances of the case the defendant was negligent" and caused the decedent's death, or whether the decedent was negligent and the decedent's negligence caused the decedent's death).

Appeals held that the trial court did not abuse its discretion when it determined that the sobriety of the person whose vehicle was struck by the defendant was not material and therefore inadmissible.[25] *Guetzkow* is distinguishable because it involved a civil forfeiture action.[26] The other driver's behavior did not affect whether the defendant was subject to civil forfeiture liability for driving her car while intoxicated. Therefore, the other driver's sobriety was irrelevant to the defendant's intoxication and arrest.[27] In this case, however, Stickel argued that the decedents' behavior (*i.e.*, speeding, drag racing and doing "wheelies") caused the accident. Given that claim, whether the decedents were intoxicated and more likely to engage in reckless behavior, was relevant.

Stickel also relies on *Farmer v. State*, an assault case.[28] In *Farmer*, the trial court ruled that it would permit testimony about the assault victim's intoxication if the defendant raised a self-defense claim.[29] The trial court reasoned that the victim's intoxication would be relevant if the defendant claimed that he was defending himself.[30] The defendant did not raise a self-defense claim, and so the trial court excluded the evidence of the victim's blood-alcohol content.[31] The Mississippi Supreme Court held that the trial court did not abuse its discretion when it ruled that the evidence was irrelevant and not admissible.[32] *Farmer* does not support Stickel's argument. *Farmer* holds that evidence of the decedent's sobriety is admissible only if the decedent's behavior is an issue in the case. The decedent's behavior there was not placed in issue.

We hold that, because the decedents' behavior in driving their motorcycles was an issue in Stickel's case, the trial judge properly concluded that the toxicology reports showing that the decedents had not consumed drugs or alcohol constituted relevant evidence.[33] That evidence affected the probability of a fact that Stickel put in issue—whether the decedents were speeding, drag racing or otherwise driving their motorcycles dangerously. Evidence that the decedents had not consumed drugs or alcohol was properly admissible in response to the defendant's factual assertions about the decedents' behavior. Therefore, the record reflects that the trial judge properly exercised his discretion when he admitted the evidence that the decedents had not consumed drugs or alcohol.

### Conclusion

The judgments of the Superior Court are affirmed.

**25.** *City of Wauwatosa v. Guetzkow*, 1987 WL 267122, at *3 (Wis.Ct.App. Mar. 16, 1987).

**26.** *City of Wauwatosa v. Guetzkow*, 1987 WL 267122, at *2.

**27.** *Id.*, at *3.

**28.** *Farmer v. State*, 770 So.2d 953, 958 (Miss. 2000).

**29.** *Farmer v. State*, 770 So.2d at 958.

**30.** *Id.*

**31.** *Id.*

**32.** *Id.*

**33.** *Lilly v. State*, 649 A.2d 1055 (Del.1994).