Thomas **BAIRD**, Plaintiff Below, Appellant,

v.

**Frank R. OWCZAREK, M.D., Eye Care of Delaware LLC, and Cataract and Laser Center, LLC,** Defendants Below, Appellees.

No. 504, 2013.

Supreme Court of Delaware.

Submitted: May 14, 2014.
Decided: May 28, 2014.

---

Bruce L. Hudson, Esquire, Hudson & Castle Law, Wilmington, Delaware, and Todd J. Krouner, Esquire (argued), Chappaqua, New York, for appellant.

Gregory S. McKee, Esquire (argued), Joshua H. Meyeroff, Esquire, Wharton Levin Ehrmantraut & Klein, P.A., Wilmington, Delaware, for appellees.

Before HOLLAND, BERGER and RIDGELY, Justices.

HOLLAND, Justice:

This is an appeal from a final judgment of the Superior Court that was entered after a jury verdict in favor of defendants-appellees, Frank R. Owczarek, M.D. ("Dr. Owczarek"), Eye Care of Delaware, LLC, and Cataract and Laser Center, LLC (collectively, the "Appellees"). The plaintiff-appellant, Thomas Baird ("Baird"), appeals on a number of grounds. We have concluded that the Superior Court's failure to conduct *any* investigation into alleged egregious juror misconduct (internet research), which violated the Superior Court's direct instruction to refrain from consulting outside sources of information, constituted reversible error. In addition, the Superior Court's failure to exclude evidence of informed consent in this medical negligence action also constituted reversible error. Accordingly, the judgments of the Superior Court are reversed and this matter is remanded for a new trial.[1]

*Facts*

On January 27, 2004, Baird underwent a LASIK[2] procedure on both eyes performed by Dr. Owczarek. On October 14, 2009, Baird underwent a second LASIK surgery on his left eye—a LASIK "enhancement." Baird alleged that as a result of the surgeries, he developed post-LASIK ectasia, a vision-threatening corneal disease that required a DALK[3] procedure.

On September 30, 2011, Baird filed a medical negligence action, alleging that the Dr. Owczarek was negligent, not during his performance of the surgeries themselves, but in his decision to perform the surgeries in the first place. Baird also brought a claim based on a lack of informed consent, which he later withdrew.

Having withdrawn his informed consent claim, Baird moved to exclude the defense of assumption of risk and evidence of informed consent. In the same motion, Baird requested that the trial judge exclude the expert testimony of Dr. Steven Siepser, the defendant's standard of care expert. The trial judge denied the motions, but agreed to give a limiting instruction on the issue of informed consent.

An eight-day trial began on April 1, 2013. The jury returned a verdict in favor of the defendants. Over a two-week period following the trial, Juror No. 6 left a telephone message with Baird's counsel and repeatedly attempted to contact the trial judge to inform him of juror misconduct. Eventually, Juror No. 6 wrote a letter to the trial judge alleging that Juror No. 9 had done internet research during the jury's deliberations. Baird moved for

---

1. We do not address the other evidentiary issues raised by Baird in this appeal but instead hold that those evidentiary rulings shall not constitute the law of the case at a new trial.

2. Laser–Assisted *In Situ* Keratomileusis.

3. Deep Anterior Lamellar Keratoplasty.

a new trial based upon the allegations of misconduct by Juror No. 6. After hearing oral argument, the trial judge summarily denied the motion for a new trial without conducting any investigation.

### Delaware Constitution

The historical origins of the right to trial by jury which is provided for in the Delaware Constitution was reviewed by this Court in *Claudio v. State*.[4] When the Delaware Constitution of 1792 was adopted, the right to trial by jury set forth in the federal Bill of Rights as the Sixth[5] and Seventh[6] Amendments to the United States Constitution was only a protection against action by the federal government.[7] In *Claudio*, this Court noted that when Delaware adopted its Constitution in 1792, notwithstanding the ratification of the first ten amendments or federal Bill of Rights in 1791, it did not create "a mirror image of the United States Constitution" with regard to trial by jury.[8]

Following the adoption of the Fourteenth Amendment to the United States Constitution, the Sixth Amendment right to trial by jury in *criminal* proceedings has been deemed to have been incorporated by the Due Process clause and now also provides protection against state action.[9] Nevertheless, the United States Supreme Court has not held that the Seventh Amendment's guarantee of jury trials in *civil* proceedings was made applicable to the states by the incorporation doctrine[10] with the adoption of the Fourteenth Amendment to the United States Constitution.[11] Accordingly, the right to a jury trial in civil proceedings has always been and remains exclusively protected by provisions in the Delaware Constitution.[12]

### Jury Determines Facts

When the Delaware Constitution was rewritten in 1897, the General Assembly included several significant provisions regarding the right to trial by jury. Article I of the 1897 Delaware Constitution was denominated for the first time as the "Bill of Rights." Section 4 of that article provided for the right to trial by jury as "heretofore." Article IV, Section 19 was a new addition in the 1897 Constitution and provided: "Judges shall not charge juries with respect to matters of *fact*, but may

---

**4.** *Claudio v. State*, 585 A.2d 1278 (Del.1991).

**5.** The Sixth Amendment pertains to criminal trials. For a discussion of the history of trial by jury in criminal proceedings in Delaware *see Claudio v. State*, 585 A.2d 1278 (Del.1991).

**6.** The Seventh Amendment pertains to civil trials and provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no *fact* tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII (emphasis added). For a discussion of the history of trial by jury in civil proceedings in Delaware *see McCool v. Gehret*, 657 A.2d 269 (Del.1995).

**7.** *Barron v. Mayor of Baltimore*, 32 U.S. (7 Pet.) 243, 8 L.Ed. 672 (1833).

**8.** *Claudio v. State*, 585 A.2d at 1289.

**9.** *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).

**10.** *See McDonald v. City of Chicago*, 561 U.S. 742, 130 S.Ct. 3020, 3034 n. 12, 177 L.Ed.2d 894 (collecting cases where federal Bill of Rights have been incorporated) & n. 13 (collecting cases where federal Bill of Rights have not been incorporated) (2010).

**11.** *Minneapolis & St. Louis R.R. v. Bombolis*, 241 U.S. 211, 36 S.Ct. 595, 60 L.Ed. 961 (1916); *Walker v. Sauvinet*, 92 U.S. 90, 23 L.Ed. 678 (1876).

**12.** *McCool v. Gehret*, 657 A.2d 269 (Del.1995).

state the questions of *fact* in issue and declare the law."[13] The reason given during the Constitutional Debates for the adoption of Section 19 was to ensure "that Judges shall confine themselves to their business, which is to adjudge the law and leave *juries to determine the facts.*"[14]

In *Storey,* this Court characterized Section 19 as perpetuating Delaware's commitment to trial by jury in civil actions at law with regard to *issues of fact.*[15] In examining when a trial judge may set aside a jury verdict, this Court described Delaware's long history of commitment to trial by jury.[16] We explained that Section 19 reaffirmed Delaware's commitment to the common law principles regarding trial by jury:

> In the policy of the law of this state, declared by the courts in numberless decisions, the *jury is the sole judge of the facts* of a case, and so jealous is the law of this policy that by express provision of the Constitution the court is forbidden to touch upon the facts of the case in its charge to the jury.[17]

■ Accordingly, under the Delaware Constitution, an essential element of the right to trial by jury is for verdicts to be based solely on *factual determinations* that are made from the evidence presented at trial.[18] The accused's rights to confrontation, cross-examination and the assistance of counsel[19] assure the accuracy of the testimony which the jurors hear and safeguard the proper admission of other evidence.[20] *Those rights can be exercised effectively only if evidence is presented to the jury in the courtroom,*[21] where that evidence can be subjected to the adversarial process under the authoritative guidance of a trial judge. These principles are equally applicable to the parties' rights in a Delaware civil jury trial. In addition, the Delaware Constitution provides that, in a civil proceeding that is appealed to this Court, "from a verdict of a jury, the findings of the jury, if supported by the evidence, shall be conclusive."[22]

### Ascertaining Juror Misconduct

■ The right to an impartial jury is compromised if even one juror is improperly influenced.[23] This Court has recognized the difficulty which a party has in *proving actual prejudice within a jury panel.*[24] That difficulty is attributable to the sanctity of the jury's deliberations and the common law prohibition against jurors impeaching their own verdict. Accordingly, this Court has held "that a flat prohibition against receiving post-verdict testimony from jurors would contravene another important public policy: that of 'redressing the injury of the private litigant where a

13. Del. Const. art. IV, § 19 (emphasis added).

14. 3 *Constitutional Debates* at 1730 (emphasis added). *See Storey v. Camper,* 401 A.2d 458, 463 n. 4 (Del.1979).

15. *Storey v. Camper,* 401 A.2d at 462–65.

16. *Id.*

17. *Id.* at 462 (quoting *Philadelphia, B. & W. R. Co. v. Gatta,* 85 A. 721, 729 (Del.1913)) (emphasis added).

18. *Hughes v. State,* 490 A.2d 1034, 1040 (Del. 1985).

19. *Turner v. Louisiana,* 379 U.S. 466, 473, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965).

20. *Smith v. State,* 317 A.2d 20, 23 (Del.1974).

21. *Id.*

22. Del. Const. art. IV, § 11(1)(a) (emphasis added).

23. *Styler v. State,* 417 A.2d 948, 951–52 (Del. 1980).

24. *Massey v. State,* 541 A.2d 1254, 1257–58 (Del.1988).

verdict was reached by a jury that was not impartial.' " [25]

The need to accommodate the conflicting policies of preserving the sanctity of a jury's deliberations and the parties' right to an impartial jury, has resulted in the recognition of a distinction between extrinsic and intrinsic influences upon a jury's verdict.[26] D.R.E. 606(b) codifies the common law prohibition against inquiry into the jurors' mental processes,[27] but also provides an exception:

> [A] juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether **any outside influence** was improperly brought to bear upon **any juror**.[28]

### Egregious Circumstance Test

■ In an effort to address the evidentiary limitations caused by precluding any inquiry into a juror's mental processes, this Court has adopted an inherently prejudicial egregious circumstance test.[29] To succeed on a claim of improper jury influence, a party must either prove that he or she was "identifiably prejudiced" by the juror misconduct or prove the existence of

" 'egregious circumstances,'—i.e., circumstances that, if true, would be deemed inherently prejudicial so as to raise a presumption of prejudice." [30] The presumption of prejudice can be rebutted, however, by a post-trial investigation conducted by the trial judge.[31]

### Juror Internet Research Improper

■ In this case, the Superior Court clearly and appropriately instructed the jury that they were not to " . . . use any electronic device or media, such as a telephone, cell phone, smart phone, iPhone, Blackberry, computer; the Internet, any Internet service, or any text or instant messaging service; or Internet chat room, blog, or website such as Facebook, My Space, LinkedIN [sic], YouTube or Twitter to communicate to anyone any information in this case or conduct any research about this case until I accept your verdict." [32]

Baird argues that Juror No. 9's internet research was an improper extraneous influence and was an "egregious circumstance" that raised a presumption of prejudice. We agree. Internet research provides a juror with access to information that was not admitted into evidence and

25. *Sheeran v. State*, 526 A.2d 886, 895 (Del. 1987) (citing *Patterson v. Colorado*, 205 U.S. 454, 462, 27 S.Ct. 556, 51 L.Ed. 879 (1907)).

26. *Id.*

27. It has been codified in Delaware Rule of Evidence 606(b):

COMPETENCY OF JUROR AS WITNESS. *Inquiry into Validity of Verdict or Indictment.* Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the ques-

tion whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

28. *Id.* (emphasis added).

29. *Massey v. State*, 541 A.2d at 1258–59.

30. *Sykes v. State*, 953 A.2d 261 (Del.2008).

31. *Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1954).

32. *See* Appellant's Op. Br.App. at A–1211.

consists of written "text" that is inadmissible into evidence under any circumstance.

This Court has held that "charts" admitted into evidence, which included explanatory "text" cannot be distinguished in a principled way from a "text from learned treatises" which the policy underlying D.R.E. 803(18) prohibits from going into the jury room during deliberations.[33] Delaware Rule of Evidence 803(18) states:

> [t]o the extent called to the attention of an expert witness upon cross-examination, or relied upon by him in direct examination, statements contained in published treatises, periodicals or pamphlets on a subject of history, medicine or other science or art, established as reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. If admitted, the *statements may be read into evidence but may not be received as exhibits.*

According to *Weinstein and Berger*, the purpose of Rule 803(18) is to help "ensure that the jurors will not be unduly impressed by the treatise, and that they will not use the text as a starting point for conclusions untested by expert testimony...."[34] The *Handbook of Federal Evidence* notes that the "provision attempts to prevent jurors from overvaluing the written word...."[35] *Jones on Evidence Civil and Criminal* states:

> The last sentence of the rule permits the attorney to read relevant passages from the treatise into evidence to bolster, or

as the basis of questions to challenge the witness, but neither the treatise itself, or the relevant passages, may be received as exhibits. **This restriction is intended to prevent jurors from attempting to interpret or apply the treatise on their own independent of the testimony of the expert witness(es) who are questioned about it.**[36]

■ Internet research by a juror is an improper extrinsic influence that is an egregious circumstance because it has the prospect of being so inherently prejudicial that it raises a presumption of prejudice. Several decades ago, this Court held "fairness and, indeed, the integrity of the judicial process, make it imperative that jurors receive information about the case only as a corporate body in the courtroom."[37] "Nothing is more repugnant to our traditions of justice than to be at the mercy of witnesses [or written text] one cannot see or challenge, or to have one's rights stand or fall on the basis of unrevealed facts that perhaps could be explained or refuted."[38] The following rationale is applicable to internet research by a juror:

> Had evidence of such matters been offered and admitted over his objections, it would have been reversible error. If the admission of such evidence in the trial, where he at least might have had opportunity to meet and perchance explain the damaging facts, would be prejudicial, it cannot be less so when the facts are brought to the attention of the jurors in the jury room by one of their fellows whose word, of course, the oth-

**33.** *Berry v. Cardiology Consultants, P.A.*, 935 A.2d 255 (Del.2007).

**34.** 4 *Weinstein and Berger, United States Rules*, ¶ 803(18)[02], at 803–375 (1995).

**35.** Michael H. Graham, *Handbook of Federal Evidence* § 803:18, at 415 (6th ed.2006).

**36.** 5 *Jones on Evidence Civil and Criminal*, § 35:28, at 317 (7th ed. 2003) (emphasis added).

**37.** *Smith v. State*, 317 A.2d at 23.

**38.** *Torres v. Allen Family Foods*, 672 A.2d 26, 31 (Del.1995).

ers have no reason to doubt and without the knowledge or consent of defendant nor with any opportunity for him to explain the facts or rebut the unfavorable inferences.[39]

Jurors cannot render a fair verdict when *facts* to support the basis for that verdict do not appear in the record evidence that was presented to them in the courtroom. Similarly, a judge may not investigate issues of fact on the internet, when a judge sits as the fact finder without a jury.[40]

### *Further Investigation Mandatory*

██ Under D.R.E. 606(b), "a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror."[41] Thus, testimony about "extrinsic" influences is permissible under the rule. The trial judge acknowledged that under the rules of evidence, Juror No. 6 would be permitted to testify about the "something" that was researched by Juror No. 9.

Nevertheless, the trial judge did not call Juror No. 6 to testify. The trial judge explained why he concluded that the circumstances alleged in the letter from Juror No. 6 did warrant further investigation:

> The circumstances do not come close to warranting a new trial or further investigation here because Juror No. 6 has not stated with any detail what Juror No. 9 researched online. Juror No. 6 has not explained (if she even knows) what Juror No. 9 "looked up" on the internet. Any prejudice is thus completely speculative. In other words,

Plaintiff has not shown that here is a "reasonable probability" that what Juror No. 9 researched online affected the verdict.

██ Baird argues that the Superior Court abused its discretion in finding that Juror No. 6 could, pursuant to D.R.E. 606(b), testify that Juror No. 9 did internet research, but in failing to call her to testify or conduct any further investigation to determine the content of the outside research. We agree. Generally, "[t]he trial court has discretion to decide that allegations of juror misconduct are not sufficiently credible or specific to warrant investigation."[42] However, once the trial court has been presented with evidence of internet research by a juror it is incumbent on the trial judge to conduct an investigation.

██ Internet research by a juror is intolerable misconduct because it is an extrinsic influence that has the potential to prejudicially compromise the jury's function under the Delaware Constitution to *determine facts* exclusively based upon evidence that is presented in the courtroom. Accordingly, we hold that where, as here, a juror makes allegations that one or more jurors violated a direct instruction of the trial judge to refrain from conducting internet research, such allegations represent an egregious circumstance giving rise to a rebuttable presumption of prejudice from exposure to an improper extrinsic influence. The presumption of prejudice can be rebutted by an investigation.[43]

██ An investigation is mandatory when there is an allegation of internet research by a juror. The trial judge must

---

**39.** *Hughes v. State,* 490 A.2d at 1045 n. 13.

**40.** *Tribbitt v. Tribbitt,* 963 A.2d 1128 (Del. 2008).

**41.** D.R.E. 606(b).

**42.** *Black v. State,* 3 A.3d 218, 221 (Del.2010).

**43.** *Black v. State,* 3 A.3d 218, 220 (Del.2010).

determine whether the alleged internet research actually occurred; if it occurred, the content of the outside research; whether the content of the internet research prejudiced the errant juror; and whether the results of the internet research were communicated to other jurors. If after the trial judge's investigation there is sufficient evidence to rebut the presumption of prejudice, the trial judge may deny a motion for a new trial. If, however, the opposing party fails to rebut the presumption of prejudice arising from a showing of an egregious circumstance (internet research), the trial judge must grant a motion for a new trial.

In this case, the allegation of internet research by a juror presented an egregious circumstance. It raised a rebuttable presumption of prejudice by an extrinsic influence that may have been rebutted by a post-trial investigation. The trial judge's failure to conduct *any* investigation was an abuse of discretion and reversible error.[44] Since the presumption of prejudice was not rebutted, the unexpanded, uncontradicted record reflects that parties' rights under the Delaware Constitution, to have the case exclusively decided by evidence that was presented to the jury in the courtroom, were violated.

### *Informed Consent Forms Improperly Admitted*

■ After Baird withdrew his claim for lack of informed consent, his counsel filed a motion *in limine* which sought to preclude the presentation of several pieces of evidence. Among the evidence objected to was the various informed consent forms signed by Baird prior to his surgeries. In the motion, Baird's counsel argued that the informed consent evidence "bears only upon issues relating to Plaintiff's withdrawn informed consent claim." "Therefore, they now have no probative value to any issues remaining in this action. Moreover, the consent forms would prejudice, confuse and mislead the jury."

In a pretrial conference, the trial judge addressed the various parts of Baird's motion *in limine,* including the informed consent evidence. The trial judge denied Baird's motion after finding that the informed consent forms were relevant as part of "the work-up done by the defendant" in the context of an elective procedure. The trial judge then requested that Baird's counsel "take the lead" in drafting a jury instruction that would inform the jury about the proper use of the evidence. The jury instructions ultimately contained the following language:

> Informed consent is not a valid defense to a medical negligence action. Plaintiff-patient cannot consent to the negligence of a defendant-doctor. The fact that the defendant-doctor may have informed the plaintiff of certain known and accepted risks, does not excuse him of liability for any negligence.

> When determining whether or not Dr. Owczarek committed medical negligence, you may not, and should not, consider any evidence of Mr. Baird's consent or any warnings given by Dr. Owczarek, as evidence that Mr. Baird

44. *Black v. State,* 3 A.3d 218, 221 (Del.2010). *Accord Gov't of the Virgin Islands v. Weatherwax,* 20 F.3d 572, 578 (3d Cir.1994) ("We have emphasized the importance of questioning jurors whenever the integrity of their deliberations is jeopardized.... failure to evaluate the nature of the jury misconduct or the existence of prejudice require[s] a new trial."). *See also United States v. Bristol–Martir,* 570 F.3d 29 (1st Cir.2009); *United States v. Resko,* 3 F.3d 684 (3d Cir.1993) (failure to adequately investigate the prejudicial effect of jury misconduct on the jury's deliberations). *See also* George L. Blum, Annotation, *Prejudicial Effect of Juror Misconduct Arising from Internet Usage,* 48 A.L.R.6th 135 (2009).

consented to Dr. Owczarek's negligence, if any.

 In Delaware, assumption of risk is not a valid defense to a medical negligence action as a matter of public policy.[45] This Court has never addressed the question of whether evidence of informed consent may be entered into evidence in a medical negligence case where the plaintiff makes no claim for lack of informed consent. That question has been addressed, however, by courts in a number of other jurisdictions. Those cases "uniformly have concluded that evidence of informed consent, such as consent forms, is both irrelevant and unduly prejudicial in medical malpractice cases without claims of lack of informed consent."[46] We agree.

In order to be admissible at trial, evidence must be relevant.[47] Relevant evidence, as defined by Delaware Rule of Evidence 401, is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[48] D.R.E. 401's definition of relevance contains aspects of materiality and probative value.[49] This Court has said that "evidence is material if it is offered to prove a fact that is of consequence to the action[, and it] has probative value if it affects the probability that the fact is as the party offering the evidence asserts it to be."[50]

Dr. Owczarek argues that the evidence of informed consent, especially the consent forms Baird signed, was relevant to the work-up done prior to the surgery, which Dr. Owczarek contends was put at issue during trial. In addition, Dr. Owczarek submits that the consent forms were relevant to the historical context of Baird's treatment and the fact that the surgery was elective. We conclude that Dr. Owczarek's arguments are without merit.

In this case, Baird originally brought claims for lack of informed consent and for medical malpractice. Significantly, howev-

---

**45.** See *Storm v. NSL Rockland Place, LLC,* 898 A.2d 874, 885 (Del.Super.2005).

**46.** *Hayes v. Camel,* 283 Conn. 475, 927 A.2d 880, 889 (2007) (finding that trial court abused its discretion by allowing into evidence informed consent forms in a claim for negligence, but finding error harmless). *See also Waller v. Aggarwal,* 116 Ohio App.3d 355, 688 N.E.2d 274, 275–76 (1996) (finding that the issue of informed consent, and therefore evidence thereof, was irrelevant to plaintiff's claim of negligence and carried great potential for jury confusion); *Liscio v. Pinson,* 83 P.3d 1149, 1156 (Colo.App.2003) (finding that evidence pertaining to a patient's informed consent may be unfairly prejudicial and irrelevant to a negligence claim, but finding no reversible error because plaintiff "opened the door"); *Wright v. Kaye,* 267 Va. 510, 593 S.E.2d 307, 317 (2004) (finding reversible error where trial court failed to grant plaintiff's motion *in limine* to exclude evidence of informed consent where no claim for lack of informed consent); *Warren v. Imperia,* 252 Or.App. 272, 287 P.3d 1128 (2012) (trial court did not abuse its discretion in excluding evidence of informed consent in a medical malpractice case where no "lack of informed consent" claim was brought because the evidence was irrelevant and, to the extent relevant, unfairly prejudicial and confusing to the jury); *Schwartz v. Johnson,* 206 Md.App. 458, 49 A.3d 359, 371–75 (Md.Ct.Spec.App.2012) (trial court did not abuse its discretion in excluding evidence of informed consent because irrelevant to claim for medical malpractice without a "lack of informed consent" claim and overly prejudicial or confusing to jury even if relevant).

**47.** *Stickel v. State,* 975 A.2d 780, 782 (Del. 2009).

**48.** D.R.E. 401.

**49.** *Stickel v. State,* 975 A.2d at 783 (citing *Lilly v. State,* 649 A.2d 1055, 1060 (Del. 1994)).

**50.** *Id.*

er, Baird dismissed his claim for lack of informed consent prior to trial. Once Baird's claim for lack of informed consent was removed from the suit, the consent forms Baird signed pre-surgery became irrelevant, because assumption of the risk is not a valid defense to a claim of medical negligence,[51] and because evidence of informed consent is neither material or probative of whether Dr. Owczarek met the standard care in concluding that Baird was an eligible candidate for the surgery.[52] Therefore, the evidence should have been excluded pursuant to D.R.E. 401.

Even if relevant, "evidence may be excluded where its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading he jury...."[53] Informing the jury of a plaintiff's consent does not help a defendant show that he was not negligent. Evidence of informed consent in a medical malpractice action could confuse the jury by creating the impression that consent to the surgery was consent to the injury.[54] Therefore, because evidence of informed consent in this case carried a clear danger of confusing the jury, even if the evidence would have been otherwise relevant, it should have been excluded pursuant to D.R.E. 403. The trial judge's failure to do so was an abuse of its discretion.

### Conclusion

The judgment of the Superior Court is reversed, and the matter is remanded for a new trial.

51. *Storm v. NSL Rockland Place, LLC,* 898 A.2d 874, 885 (Del.Super.2005).

52. *Schwartz v. Johnson,* 206 Md.App. 458, 49 A.3d 359, 374–75 (Md.Ct.Spec.App.2012).

53. D.R.E. 403.

54. *Schwartz v. Johnson,* 206 Md.App. 458, 49 A.3d 359, 374 (Md.Ct.Spec.App.2012) (citing *Hayes v. Camel,* 283 Conn. 475, 927 A.2d 880, 888–89 (2007)).