# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | Case No. 2110004703 |
| | ) | |
| QUAZIM ISHOLA, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: *February 27, 2023*
Decided: *March 8, 2023*

## MEMORANDUM OPINION AND ORDER

*Upon Consideration of Defendant's Motion for a New Trial:*
**GRANTED**

Alexandra LeRoy, Esquire, and Sehr Rana, Esquire, Deputy Attorneys General, of the DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware, for the State of Delaware.

Alanna Farber, Esquire, and Monika Germono, Esquire, of the OFFICE OF DEFENSE SERVICES, Wilmington, Delaware, for Quazim Ishola.

**JONES, J.**

## INTRODUCTION

This case is before the Court upon the post-trial motion of the Defendant, Quazim Ishola, for a new trial. After a week-long trial, a jury convicted Mr. Ishola of one count of Possession of a Firearm During the Commission of a Felony ("PFDCF") on January 13, 2023.[1] The conviction stemmed from Mr. Ishola's role in an October 2021 shooting.

Mr. Ishola has now moved for a new trial under Superior Court Criminal Rule 33.[2] Upon careful review, the Court is satisfied that an error was committed during jury deliberations which substantially affected Mr. Ishola's rights. Thus, it is in the interest of justice that the Court **GRANTS** his motion for a new trial. Mr. Ishola's alternative motion for an evidentiary hearing is **DENIED** as moot.

## PROCEDURAL OVERVIEW

For present purposes, the Court incorporates the factual background of Mr. Ishola's case as recited in the January 2023 order denying his motion to suppress evidence.[3] What follows is a brief explanation of the pertinent events that led to the filing of the motion before the Court.

### A. The Discovery of the Extraneous Material

A few hours after the jury returned its verdict, counsel for both the State and Mr. Ishola received an email from MB, the Court's case manager assigned to Mr.

---

[1] Because Mr. Ishola was a minor when the charged offenses occurred, only the PFDCF charge was tried in Superior Court. The other charges were brought (and remain) in Family Court for further disposition.

[2] Sup. Ct. Crim. R. 33.

[3] *See generally State v. Ishola*, 2023 WL 569465 (Del. Super. Jan. 20, 2023).

Ishola's trial. The email's subject line was "Urgent!" and the message read in its entirety:

> The attached image shows a photocopy of three inserts that I found mixed in with the evidence after the evidence was returned to me from the jury after deliberation. Judge Jones would like to meet with everyone regarding the attachment. His Honor will be covering Case Reviews in the morning and afternoon on Tuesday, January 17th, 2023. Please advise of a time to meet on Tuesday, January 17th, 2023, that works for everyone. Please respond to His Honor via e-mail with an update.

The title of the attachment referred to in MB's email was "Court Exhibit 3." Court Exhibit 3 was a scanned copy of three small, identical strips of paper which appear to be designed for distribution (the "Inserts"). Neither party introduced the Inserts into evidence during the trial. Each Insert stated the following:

> Cure Violence Global (cvg.org)
> See TEDMED: Gary Slutkin
> "What if we treated violence like a contagious disease?"[4]

## B. The Office Conference

On January 17th, 2023, the Court held an office conference with counsel for the parties, MB, and the bailiffs present at Mr. Ishola's trial.[5] MB and the bailiffs were sworn in and testified under oath.[6] Each stated they had never seen the Inserts prior to their materialization after the discharge of the jury.[7]

More specifically, MB reported that after the jury was discharged, she went into the jury deliberation room and collected all of the trial exhibits with the help of one

---

[4] Court's Ex. 3.
[5] D.I. 70.
[6] *Id.* at 2.
[7] *Id.* at 8.

3

of the bailiffs.[8] At one point, another bailiff briefly went into the deliberation room to remove the gun locks from the evidence, then left.[9] MB carted the exhibits to her desk and began to organize them so they could be placed in the evidence vault.[10] As she organized the evidence, two of the Inserts fell onto her desk.[11] She continued sorting through the exhibits and located one more Insert.[12] MB stated she then promptly made a report to her superior, who, in turn, advised the Court of her discovery.[13]

Also at the office conference, prosecutors confirmed they: (1) had never before seen the Inserts; (2) reached out to a number of involved detectives, who stated they had never seen the Inserts; and (3) conducted an evidence review on the evening before trial and the Inserts were not present then.[14] Based on the revelations made at the conference, Mr. Ishola now moves for a new trial, or, in the alternative, an evidentiary hearing.

## ANALYSIS

### A. *The Motion for a New Trial*

The right to a fair trial before an impartial jury of one's peers is fundamental to the American criminal justice system.[15] An essential ingredient of this right is for jury verdicts to be based solely on the evidence presented at trial.[16] The accused's rights to confrontation, cross-examination, and the assistance of counsel assure the

---

[8] *Id.* at 4.
[9] *Id.* at 5.
[10] *Id.* at 11.
[11] *Id.* at 10.
[12] *Id.*
[13] *Id.* at 8.
[14] *Id.* at 12-13.
[15] *Flonnory v. State*, 778 A.2d 1044, 1051 (Del. 2001).
[16] *Id.* at 1052 (internal citations omitted).

accuracy of the testimony the jurors hear and safeguard the proper admission of other evidence. These rights, of course, can only be exercised effectively if evidence is presented to the jury exclusively within the courtroom.[17]

It follows, then, that even one improperly influenced juror compromises the right to an impartial jury.[18] But it is difficult to determine whether the jury is tainted, because, as a matter of common law, jurors may not impeach their own verdict.[19] Delaware Rule of Evidence 606(b) codifies the common law prohibition, but does provide for an exception:

> [A] juror may testify on the question of whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was properly brought to bear upon any juror.[20]

As announced by the Delaware Supreme Court in *State v. Black*, to succeed on a claim of improper jury influence, the defendant must either prove that he was "identifiably prejudiced" by: (1) the juror misconduct, or (2) the existence of "egregious circumstances" – i.e., circumstances that, if true, would be deemed inherently prejudicial so as to raise a presumption of prejudice in favor of the defendant.[21] *Black* notes this presumption of prejudice can be rebutted by a post-trial investigation conducted by the trial judge.[22]

---

[17] *Id.*
[18] *Black v. State*, 3 A.3d 218, 220 (Del. 2010) (internal citations omitted).
[19] *Sheeran v. State*, 526 A.2d 886, 894 (Del. 1987).
[20] D.R.E. 606(b).
[21] *Black*, 3 A.3d at 220.
[22] *Id.*; *see also Remmer v. United States*, 347 U.S. 227, 229 (1954) (Burden shifts to "the Government to establish . . . that such contact with the juror was harmless to the defendant.")

Mr. Ishola submits the facts surrounding the Inserts satisfy the "egregious circumstances" test defined in *Black*.[23]  Upon careful consideration of his argument, the Court agrees.

To review, the Inserts act as a solicitation for individuals to turn to the website of an organization with a purpose of addressing violence and violent crime (namely shootings) using an epidemiological approach.  The sole count in Mr. Ishola's case, PFDCF, is a "violent crime" pursuant to 11 *Del. C.* § 4201.

The Inserts also direct readers to the 2013 TEDMED Talk given by Dr. Gary Slutkin, an epidemiologist and the founder of Cure Violence.[24]  Through the TEDMED Talk, Dr. Slutkin instructs on the history of violent crime – specifically, "children shooting other children with guns" – and how to manage crime in communities experiencing shootings.  Both Mr. Ishola and the victim in his case were juveniles at the time of the shooting.

In summary, the crux of the TEDMED Talk directly relates to several matters at the heart of Mr. Ishola's trial: (1) violence and crime; (2) what should be done to interrupt the cycle of violence in high-crime communities; (3) how to prevent the spread of "children shooting children"; and (4) the presence of violence in Nigeria (it bears mention that, as Mr. Ishola testified, he is from Nigeria).  The Court must presume the commonalities between the TEDMED Talk and Mr. Ishola's trial are why the Inserts were brought into the deliberation room in the first place.

---

[23] D.I. 69 at 4.

[24] Cure Violence, according to the TEDMED website, is an anti-violence program that uses a public health approach to build on disease control and behavior change methods.

6

Even if the Inserts were placed into evidence inadvertently, the Court must ensure both the substance, and appearance of, fairness in Mr. Ishola's trial. So, in light of the above, the Court finds the presence of the Inserts in the jury deliberation room substantially affected Mr. Ishola's rights and satisfies the egregious circumstances test as defined by *Black*. His motion for a new trial is accordingly **GRANTED**.

### B. The Evidentiary Hearing

Because Mr. Ishola's motion for a new trial has been granted, the parties' request for an evidentiary hearing is **DENIED** as moot. But, in the interest of clarity, the Court will explain why the request would be denied on the merits, as well.

It is abundantly clear from the record that the offending material in the deliberation room could have come from only one source: a juror. The only other individuals with access to the evidence (MB and the bailiffs) testified, under oath, that they did not bring the Inserts into the room. Thus, as finder of fact, the Court is beyond satisfied that Court personnel were not involved with placing the Inserts in the evidence.

It is just as clear that the juror who placed the Inserts into the evidence had an obligation to come forward during *voir dire* and provide the parties (and the Court) with an opportunity to explore potential underlying bias. A juror predisposed to bringing the Inserts into the deliberation room should have answered affirmatively to at least one of the following *voir dire* questions:

> (8) Is there anything about the nature of the offenses charged
> in this case that would make it difficult for you to render a fair
> and impartial verdict?

(11) The State alleges that a firearm was used in this case. Do you have any strong feelings about firearms that would affect your ability to render a fair and impartial verdict?

(12) Have you, a member of your immediate family, or a close personal friend ever been a victim or a witness to a crime involving a firearm?

(13) Have you, a member of your immediate family, or a close personal friend ever been accused of a crime involving a firearm?[25]

Even with an evidentiary hearing, the Court's mind would remain unchanged. Clearly, twelve unbiased jurors did not judge Mr. Ishola. If the hearing were to reveal the jury panel discussed the Inserts during deliberations, then a new trial would be required. If, by the same token, the evidence was to show that all jurors denied knowledge of the Inserts, then the Court would conclude a juror was untruthful and order a new trial on those grounds.

The best-case scenario for the State would be a disclosure that the offending juror placed the Inserts into evidence without discussing it with another juror. But, even in this circumstance, one juror still considered evidence outside of what the parties presented at trial. Such an occurrence would constitute a flagrant infringement upon Mr. Ishola's due process rights.

### CONCLUSION

It is abundantly clear from the record that Mr. Ishola's right to a fair trial before an impartial jury of his peers was violated. His motion for a new trial is therefore **GRANTED**. The motion for an evidentiary hearing is **DENIED** as moot.

**IT IS SO ORDERED.**

---

[25] D.I. 62.

*/s/ Francis J. Jones, Jr.*
Francis J. Jones, Jr., Judge


Original to Prothonotary (Criminal Division)

CC:     Alexandra LeRoy, Deputy Attorney General
        Sehr Rana, Deputy Attorney General
        Alanna Farber, Esquire
        Monika Germono, Esquire